UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19-cv-104-KDB
(5:13-cr-9-KDB-DCK-1)

| | |
|---|---|
| WILLIAM NEIL THOMPSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on *pro se* Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

**I.  BACKGROUND**

Petitioner was indicted for a single count of unlawfully possessing a firearm after having been previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1). (5:13-cr-9 (CR), Doc. No. 11). Petitioner pleaded guilty without a plea agreement.

A Rule 11 hearing was held before Magistrate Judge Keesler on April 24, 2013. (CR Doc. No. 37). Petitioner agreed to proceed before the Magistrate Judge and stated under oath that his mind was clear and that he understood he was there to enter a guilty plea that could not be later withdrawn. (CR Doc. No. 37 at 3-4). Petitioner stated that he and counsel had reviewed the Indictment together. (CR Doc. No. 37 at 4-5). Judge Keesler read aloud the charges and explained the elements of the offense and advised Petitioner of his potential sentencing exposure of 10 years' imprisonment. (CR Doc. No. 37 at 5-6). Petitioner stated that he understood the charge and his sentencing exposure. (CR Doc. No. 37 at 6-7). Petitioner agreed that counsel had discussed the sentencing guidelines with him and that he understood the Court could impose any sentence within

1

the statutory limits that may be lower or higher than the guidelines range. (CR Doc. No. 37 at 6-7). The Court specifically informed Petitioner that, if he was found to be an armed career criminal, his minimum sentence would be 15 years' imprisonment and the maximum would be life and Petitioner stated he understood. (CR Doc. No. 37 at 6-7). Petitioner stated that he understood that the plea would be binding even if the sentence were more severe than he expected. (CR Doc. No. 37 at 7). Petitioner confirmed that by pleading guilty, he was waiving the right to plead not guilty, the right to have a speedy trial before a jury with the assistance of counsel, the right to summon witnesses to testify on his behalf, the right to confront witnesses against him, and the right to receive the presumption of innocence. (CR Doc. No. 37 at 8-9). Petitioner agreed that he is, in fact, guilty of the offense. (CR Doc. No. 37 at 9). Petitioner stated that his plea was freely and voluntarily entered with a full understanding of what he was doing, that he was not promised anything in exchange for his guilty plea, and that he was not threatened in any way to enter the plea against his wishes. (CR Doc. No. 37 at 9-10). Petitioner confirmed that he had had ample time to discuss possible defenses with counsel and was satisfied with counsel's services. (CR Doc. No. 37 at 10).

A written Factual Basis that was filed at the time Petitioner pleaded guilty provides:

> On 12/22/12, law enforcement in Iredell County responded to a domestic dispute call … [in] Mooresville, NC. On arriving, they met with the victim, who informed them that Thompson had assaulted her and had visible injuries. She also advised that Thompson had made threats to harm law enforcement if they tried to arrest him and that he had a handgun in the house. She consented to a search of the residence, and law enforcement located a Smith and Wesson, .32 caliber revolver.
>
> Shortly thereafter, Thompson was arrested. After being advised of his rights, he stated that **he had possessed the Smith and Wesson revolver and wiped it off**. On 1/10/13, Thompson reinitiated contact with law enforcement. After being re-advised of his rights and waiving them and counsel, Thompson stated that he bought his gun at a crack house in Cornelius, NC last summer for $30. The United States is not aware that the defendant possessed the firearm in connection with another criminal offense.

2

> **Thompson is a convicted felon**, who has neither been pardoned nor had his right to bear arms restored. The Smith and Wesson revolver that Thompson possessed was not manufactured in North Carolina and therefore traveled in interstate commerce.

(CR Doc. No. 14 at 1-2) (emphasis added).

The Presentence Investigation Report ("PSR") calculated Petitioner's advisory guideline range as 180 to 210 months' imprisonment based on the finding that he qualified for enhanced sentencing as an armed career criminal. See (CR Doc. No. 20).

The Court adjudicated Petitioner guilty and sentenced him to 180 months' imprisonment followed by three years of supervised release. (CR Doc. No. 24).

On direct appeal, the Fourth Circuit granted the parties' joint motion to remand for resentencing pursuant to United States v. Newbold, 791 F.3d 455 (4th Cir. 2015). (CR Doc. No. 39).

On remand, the Supplemental PSR calculated the base offense level as 24 because the offense is a violation of § 922(g) pursuant to U.S. Sentencing Guidelines § 2K2.1. (CR Doc. No. 47 at § 3). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 21. (CR Doc. No. 47 at ¶¶ 9-11). Petitioner had a criminal history score of 24 and a criminal history category of VI. (CR Doc. No. 20 at ¶¶ 80-81). This resulted in an advisory guideline range of between 77 and 96 months' imprisonment. (CR Doc. No. 47 at ¶ 14).

Petitioner filed objections to the Supplemental PSR, (CR Doc. No. 44), and the Court filed a Notice of Possible Upward Departure based on Petitioner's extensive criminal history, (CR Doc. No. 46). The Court denied Petitioner's objections and departed upward because the criminal history category was inadequate. See; (CR Doc. No. 50) (Statement of Reasons); (CR Doc. No. 55) (Transcript of Resentencing Hearing).

3

Petitioner's attorney filed an Anders[1] brief on direct appeal, stating that there were no meritorious issues for appeal but questioning whether Petitioner's prior North Carolina conviction for common law robbery was properly counted as a crime of violence pursuant to U.S. Sentencing Guidelines § 4B1.2 and whether his sentence is procedurally and substantively reasonable. Petitioner filed a *pro se* supplemental brief arguing that a robbery conviction was improperly counted as a crime of violence. The Fourth Circuit affirmed, finding *inter alia* that the sentence was procedurally and substantively reasonable and that the decision to increase Petitioner's total offense level by two levels was supported by the record. United States v. Thompson, 722 F. App'x 324 (4th Cir. 2018).

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on August 2, 2019.[2] Petitioner argues that he is "constructively innocent" of violating § 922(g)(1) because the Government failed to prove, and Petitioner did not stipulate, that he knew his prohibited status at the time he possessed the firearm pursuant to Rehaif v. United States, 139 S.Ct. 2191 (2019),[3] which rendered his guilty plea invalid, violated due process, and resulted in manifest injustice. (Doc. No. 1 at 4). Petitioner asks the Court to vacate the § 922(g) conviction or, alternatively, grant an evidentiary hearing.

The Government filed a Response, (Doc. No. 6), arguing that Petitioner's § 2255 Motion to Vacate is procedurally defaulted from § 2255 review because Petitioner could have raised his arguments in the Court or on appeal but failed to do so and that Petitioner has failed to demonstrate that he is entitled to relief on collateral review.

---

[1] Anders v. California, 386 U.S. 738 (1967).

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), Rules Governing § 2255 Proceedings in the United States District Courts (addressing inmate filings).

[3] The United States Supreme Court held in Rehaif that, "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S.Ct. at 2200.

4

In his Reply, (Doc. No. 8), Petitioner reiterates his claims and argues that they are not procedurally defaulted. Petitioner argues *inter alia* that: the Government is attempting to shift the burden of proof; Rehaif is retroactive and constitutes plain, structural error; he is actually innocent as the Government failed to prove an element of the offense; and his plea violates due process and has resulted in a fundamental miscarriage of justice.[4]

## II.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   DISCUSSION

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993); see United States v. Cotton, 535 U.S. 625, 630-31 (2002) (noting that defects in an indictment are

---

[4] Any arguments or sub-claims not specifically addressed in this Order have been considered and rejected. For instance, Petitioner argues that any ambiguity in the plea agreement should be construed against the Government, (Doc. No. 8 at 8-9), however, Petitioner pleaded guilty without a plea agreement.

5

Case 5:13-cr-00009-KDB-DCK   Document 63   Filed 11/16/20   Page 5 of 11

not jurisdictional). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.; see Tollett v. Henderson, 411 U.S. 258 (1973).

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). A court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3).

Here, the Court complied with Rule 11 by confirming that Petitioner understood the charge, his sentencing exposure, and the rights he was relinquishing by pleading guilty. Petitioner stated that he discussed any possible defenses with counsel and that he was satisfied with counsel's services. Petitioner admitted that he is guilty of the offense and stated that he was pleading guilty without any promises, threats, or coercion. Petitioner's present self-serving allegations that his plea was not knowingly and voluntarily entered are conclusively refuted by the record, including his own sworn statements, and are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v.

6

Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005). Petitioner's freely and voluntarily entered guilty plea thus waived all non-jurisdictional defects, including alleged structural errors, that preceded it. See United States v. Moussaoui, 591 F.3d 263 (4th Cir. 2010) (noting that "the notion that a structural error occurring prior to a guilty plea invalidates the subsequent guilty plea would be at odds with the result in Tollett … [in which the Supreme Court] held that the defendant's claim, even if true, would not invalidate his guilty plea."). Therefore, Petitioner's knowing and voluntary guilty plea waived his challenge to the sufficiency of the Indictment and to the adequacy of the factual basis for the plea. See Willis, 992 F.2d at 490; United States v. Womack, 410 F. App'x 651 (4th Cir. 2011) (valid guilty plea waived the alleged jurisdictional defects that preceded it, including that the indictment was defective); United States v. Jaimes-Bustos, 360 F. App'x 481 (4th Cir. 2010) (guilty plea waived non-jurisdictional alleged defect that the indictment failed to allege an essential element of the crime).

Petitioner appears to argue that his Rehaif challenge was not waived by his guilty plea because he, the Court, and counsel misunderstood the § 922(g) offense's elements which rendered the guilty plea unintelligent and constitutionally invalid. See generally Bousley v. United States, 523 U.S. 614, 618 (1998) ("a plea does not qualify as intelligent unless a criminal defendant first received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process'") (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).

However, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Id. at 621. A § 2255 motion is not a substitute for direct appeal. See United States v. Frady, 456 U.S. 152, 167-68 (1982). Claims of error that could have been raised before the trial court and on direct appeal, but were not, are procedurally defaulted from § 2255 review unless the petitioner shows both cause for the default and actual

7

prejudice, or demonstrates that he is actually innocent of the offense. See Bousley, 523 U.S. at 621; United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008).

"[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). A subsequent change in the law constitutes "cause" only where "a constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984). However, "alleged futility cannot serve as 'cause' for procedural default in the context of collateral review." See Whiteside v. United States, 775 F.3d 180, 185 (4th Cir. 2014) (*en banc*) (citing Bousley, 523 U.S. at 623). To show prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his *actual* and substantial disadvantage" and were of constitutional dimension. See Frady, 456 U.S. at 170.

To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014). Actual innocence means factual innocence, not legal insufficiency. See Mikalajunas, 186 F.3d at 494; see also McQuiggin v. Perkins, 569 U.S. 383, 393 (2013) ("a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims … on the merits notwithstanding the existence of a procedural bar to relief.").

Petitioner did not raise his Rehaif claim before this Court or in either of his direct appeals. He attempts to avoid procedural default by arguing that his claim is novel and that he is actually innocent of violating § 922(g). First, Petitioner's claim of novelty fails because he only demonstrates futility, not that the claim was unavailable. It is insufficient to argue that "a claim was unacceptable to that particular court at that particular time." Engle v. Isaac, 456 U.S. 107, 130 (1982). The issue decided in Rehaif "was percolating in the courts for years…." United States v.

8

Bryant, 2020 WL 353424 (E.D.N.Y. Jan. 21, 2020) (citing United States v. Reap, 391 F. App'x 99, 103-04 (2d Cir. 2010) (in challenging the validity of a plea, rejecting while affording plenary treatment to a defendant's claim that he did not know his 922(g) felon status, including his assertion that "Supreme Court jurisprudence in analogous cases" required proof of such knowledge); see also Rehaif, 139 S.Ct. at 2199 (observing that, even "[p]rior to 1986 … there was no definitive judicial consensus that knowledge of status was not needed"). Petitioner has therefore failed to demonstrate cause.

Even if the Rehaif claim is considered novel, however, Petitioner still cannot overcome procedural default because he has failed to establish prejudice or actual innocence. The PSR's criminal history section sets forth multiple felony convictions for which Petitioner was sentenced to more than 12 months in prison. See (CR Doc. No. 20 at ¶¶ 36-37) (93CRS70933, possession of cocaine, 93CRS81942 sale or delivery of cocaine, 93CRS81943, sale or delivery of cocaine, for which Petitioner was sentenced to 3 years' imprisonment); (Doc. No. 6-1) (Judgment and Commitment, case numbers 93CRS70933, 93CRS81942, 93CRS81943); (CR Doc. No. 20 at ¶ 50) (99CRS145121, 99CRS145124, sale of cocaine, for which Petitioner was sentenced to 14 to 17 months imprisonment); (CR Doc. No. 20 at ¶ 73) (07CRS248067, common law robbery, for which Petitioner was sentenced to 29 to 35 months' imprisonment). Any suggestion that Petitioner did not understand that these were felony convictions is especially incredible in light of the fact that Petitioner served more than a year in prison in at least two of those cases. (CR Doc. No. 20 at ¶ 50) (arrested November 16, 1999, released February 2, 2001); (CR Doc. No. 20 at ¶ 73) (indicating that Petitioner was arrested on October 16, 2007 and was released on March 15, 2010). Further, the Factual Resume and the Offense Conduct section of the PSR both reflect that Petitioner admitted to law enforcement officers that he had purchased the gun and that he "wiped it off,"

which further indicates that he knew he was prohibited from possessing a firearm. (CR Doc. No. 14 at 1); (CR Doc. No. 20 at ¶ 6).

While Petitioner contends that he is "constructively innocent," this is an argument of legal, rather than factual, innocence. (Doc. No. 1 at 4). His arguments that the Indictment fails to include the knowledge element and that the Government did not prove and Petitioner did not stipulate that he knew his prohibited status pursuant to Rehaif are legal arguments. Petitioner has not come forward with any credible evidence that he is not guilty of the offense as a matter of fact. As previously discussed, the record demonstrates that Petitioner was well aware of his prohibited status by way of his numerous prior felony convictions and wiping off the firearm. See Erwin v. United States, 2020 WL 5822219 (W.D.N.C. Sept. 30, 2020) (dismissing § 2255 Rehaif claim as waived and procedurally defaulted where petitioner served a three-year sentence for his prior felony convictions and was serving supervised release on those convictions when he committed the instant offense); Wilson v. United States, 2020 WL 4950930 (W.D.N.C. Aug. 24, 2020) (dismissing § 2255 Rehaif claim as procedurally defaulted where the record, including multiple felony convictions for which Petitioner served 12 months or more in prison, establishing that petitioner knew his status as a convicted felon). Therefore, Petitioner's Rehaif claim is procedurally defaulted from § 2255 review, no exception applies, and the § 2255 Motion to Vacate will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice.

10

Case 5:13-cr-00009-KDB-DCK   Document 63   Filed 11/16/20   Page 10 of 11

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: November 16, 2020

Kenneth D. Bell
United States District Judge